**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


ILKKA J. KALSKE,

       Appellant,

v.                              CASE NO.  5:15cr23-RH

UNITED STATES OF AMERICA,

       Appellee.

_____/


## OPINION ON APPEAL


The defendant Ilkka J. Kalske appeals his conviction of loitering or
prowling. He was on Tyndall Air Force Base without permission, in the tree line of
a wooded area, taking photographs with a telephoto lens, and when confronted by a
security officer, refused to identify himself or say why he was there. He asserts the
conviction was not supported by sufficient evidence and that the trial court
improperly admitted evidence of prior similar conduct at other locations.

I

At about 5:00 p.m. on November 6, 2014, Air Force police officer Steven
Foster, Jr. saw Mr. Kalske in a line of trees—apparently the edge of a wooded

area—on Tyndall Air Force Base. The location was within the Air Force's exclusive jurisdiction but was only about 60 feet from a public United States highway on which the Air Force and the State of Florida have concurrent jurisdiction. Officer Foster saw that Mr. Kalske had a camera with a large lens—as it turns out, a telephoto lens. He was taking pictures of traffic patterns and an elementary school on the base.

Officer Foster approached Mr. Kalske and asked for identification. Mr. Kalske refused to provide it, refused to explain what he was doing there, and walked away. Officer Foster followed. Mr. Kalske said he was not obligated to provide identification or explain his actions, but he eventually said he was in the woods taking pictures of squirrels. Officer Foster called for backup. The base's chief of security and other officers arrived at the scene. After further discussion, the officers arrested Mr. Kalske.

II

The government filed an information charging Mr. Kalske with loitering or prowling in violation of Florida Statutes § 856.021. The statute is applicable within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 13. Tyndall Air Force Base is within the territorial jurisdiction of the United States. *See id*. § 7.

Loitering or prowling is a misdemeanor. The case proceeded to a nonjury trial before a magistrate judge. At the close of the government's evidence, Mr. Kalske moved for judgment of acquittal. The court denied the motion. Mr. Kalske presented a defense case consisting of his own testimony. At the close of all the evidence, Mr. Kalske did not renew the motion for judgment of acquittal. The court found Mr. Kalske guilty without explanation. He brings this appeal.

III

In ruling on a motion for judgment of acquittal, a court must view the evidence in the light most favorable to the government. Evidence is sufficient to sustain a conviction if a reasonable jury—or, in a bench trial, a reasonable judge— could find the defendant guilty beyond a reasonable doubt. *See, e.g.*, *United States v. Vernon*, 723 F.3d 1234, 1252 (11th Cir. 2013). To preserve this issue, a defendant must move for judgment of acquittal at the close of all the evidence. A motion at the close of the government's evidence is neither necessary nor sufficient. On appeal, the issue is reviewed de novo, without deference to the trial court. *Id.*

Mr. Kalske moved for judgment of acquittal at the close of the government's case. But when the motion was denied, he presented evidence of his own, and he failed to move for judgment of acquittal at the close of all the evidence. As a result, review on this appeal properly considers all the evidence—not just the evidence

presented during the government's case in chief—and the conviction can be reversed only to avoid a "manifest miscarriage of justice." *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994) (quoting *United States v. White*, 611 F.2d 531, 536 (5th Cir. 1980)); *see also United States v. Thomas*, 987 F.2d 697, 702 (11th Cir. 1993); *United States v. Johnson*, 645 F. App'x 904, 905 (11th Cir. 2016).

As it turns out, the failure to move for judgment of acquittal at the close of all the evidence made no difference. Even had the issue been preserved, the result would be the same.

IV

The starting point for any analysis of what the government must prove to obtain a conviction is the statute itself. The loitering-or-prowling statute provides:

> (1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

> (2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement

officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.

(3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree . . . .

Fla. Stat. § 856.021.

Under the statute's plain language, and as the Florida Supreme Court has recognized, there are two elements of the offense. *See State v. Ecker*, 311 So. 2d 104 (Fla. 1975). First, the defendant must "loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals." Second, the defendant must do it "under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." These are objective standards.

The government met each of these elements.

First, to "loiter or prowl" means little more than to be at a place for no discernible lawful purpose. Florida courts have read nothing more into this language. This is an offense only if the person is present "at a time or in a manner not usual for law-abiding individuals." Mr. Kalske was on an Air Force base where he had no right to be, and he was there for no discernible lawful purpose.

This was an almost prototypical instance of being "in a place, at a time or in a manner not usual for law-abiding individuals." Perhaps there are individuals

who, even with all that has happened in the world in the last 15 years or so, believe they can just walk onto an American military base and take photographs. Perhaps Mr. Kalske was one of them. But most law-abiding individuals know better, and most do not do it. That Mr. Kalske was beyond a tree line, taking photographs with a telephoto lens of traffic patterns and an elementary school, further confirms the unusual nature of his activity.

In short, the government established this element of the offense, even without consideration of Mr. Kalske's refusal to provide his identity or explain his conduct and even without consideration of his eventual provision of untrue or at least incomplete explanations.

Second, the circumstances warranted "a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." Mr. Kalske seems to assert that there must be a threat of immediate injury to persons or property, but that is not what the statute says. The statute requires only an "immediate concern" or, alternatively, a "justifiable and reasonable alarm." An uninvited individual taking photographs on a military base for no discernible legitimate purpose is a cause for alarm and for concern—right then, not later. And as § 856.021(2) expressly provides, among the circumstances that can be considered on this issue is the person's refusal to provide the person's identity. At the outset, and even more clearly by the point at which Mr. Kalske refused to

identify himself, a reasonable officer would have had an immediate concern. The government established this element of the offense.

That brings us to any implied requirement of intent. In his testimony, Mr. Kalske admitted that he saw at least one sign indicating this was an Air Force base. Indeed, he parked at the base's visitor center. At one point he claimed he was a journalist there to compile a story on the crash of a jet during training earlier that day. Mr. Kalske must have known he was not welcome to take photographs on the base; he had been confronted by security officers less than a year earlier when taking photographs on a Florida Air National Guard base. Any reasonable factfinder, considering the facts in this record, would have concluded that Mr. Kalske acted intentionally and that he willfully defied both the governing policies and the security officers' instructions. No reasonable factfinder would conclude that Mr. Kalske really believed he could go on this base at will, take photographs, and refuse to provide identification. The government met any element of the offense related to intent.

In sum, the government proved that Mr. Kalske committed this offense.

V

Mr. Kalske asserts, though, that Florida courts have narrowed the statute—that courts have imposed conditions the government has not met. It of course is true that the governing law is that of Florida. Decisions of the Florida Supreme

Court are controlling. Decisions of the Florida district courts of appeal also are controlling absent a convincing basis to believe the Florida Supreme Court would decide the issue differently. *See, e.g., Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1280 (11th Cir. 2003).

That courts have looked skeptically on prosecutions for loitering or prowling is understandable. Mr. Kalske makes no claim that the statute is unconstitutional either on its face or as applied to him. But the statute implicates constitutional concerns. And if applied without due care, the statute risks sweeping up lawful conduct. But none of the limitations that Florida courts have suggested exonerate Mr. Kalske.

First, the statute looks forward, not back. The issue is whether a defendant's conduct created alarm or immediate concern about possible future harm to persons or property, not whether there are grounds to believe the defendant committed an offense in the past. *See, e.g., D.A. v. State*, 471 So. 2d 147, 151 (Fla. 3d DCA 1985); *Ellis v. State*, 157 So. 3d 467 (Fla. 2d DCA 2015). This does not help Mr. Kalske, because the concern in his case was entirely forward-looking; officers were concerned with what he might do next, not what he might have done in the past.

Second, some courts have suggested that a loitering-or-prowling conviction is proper only if an officer personally observed the unlawful conduct. *See, e.g.,*

*Madge v. State*, 160 So. 3d 86, 87 (Fla. 4th DCA 2015); *E.F. v. State*, 110 So. 3d 101, 104 (Fla. 4th DCA 2013); *Jones v. State*, 117 So. 3d 818 (Fla. 4th DCA 2013). This confuses two distinct issues: first, the grounds on which an officer may make an *arrest*; and second, what the prosecution must prove to obtain a *conviction*. Because loitering or prowling is a misdemeanor, Florida law allows an officer to make an arrest for the offense only based on a warrant or when the offense occurred in the officer's presence. *See* Fla. Stat. § 901.15. But nothing in the loitering-or-prowling statute or elsewhere in Florida law limits the prosecution's ability to rely on other evidence to prove its case.

Quite the contrary. In *State v. Ecker*, 311 So. 2d 104 (Fla. 1975), the Florida Supreme Court reversed the conviction of one of the defendants, Billy Worth, for lack of proof of what he did. The court said the lay citizens who observed Mr. Worth's conduct before any officer arrived should have testified but did not; in the absence of the lay witnesses' testimony, the proof was insufficient. Any assertion that conduct that occurs before an officer arrives and is observed only by laypersons cannot constitute loitering or prowling is squarely refuted by *Ecker*. The Florida Supreme Court is unlikely to follow lower-court decisions suggesting otherwise.

Third, some courts have said conduct supporting a loitering-or-prowling conviction must be complete before an officer intervenes; a person's response to an

officer cannot constitute loitering or prowling. *See, e.g.*, *D.J.E. v. State*, 178 So. 3d 78 (Fla. 1st DCA 2015); *W.D. v. State*, 132 So. 3d 871 (Fla. 2d DCA 2014). Properly understood, the proposition is true enough; a person who has not committed the offense prior to being confronted by law enforcement does not commit the offense merely by refusing to provide the person's identity, refusing to explain the person's activities, or running away.

As set out in the statute's second subsection, § 856.021(2), a person's failure to provide an identity or explanation or a person's flight has evidentiary value—it is relevant to the question what the person did or why the person did it prior to the officer's inquiry. But the person's failure to provide an identity or explanation or the person's flight does not itself constitute loitering or prowling. This does not help Mr. Kalske, because he was in the tree line on the military base taking photographs with a telephoto lens before the officer arrived.

Fourth, one Florida court, addressing a case in which the only issue was whether an officer's stop of a person was proper under *Terry v. Ohio*, 392 U.S. 1 (1968), may have attempted to graft onto the loitering-or-prowling statute an element not supported by the statute's language or by the Florida Supreme Court's decision in *Ecker*. In *McClamma v. State*, 138 So. 3d 578 (Fla. 2d DCA 2014), the court suggested that the statute's requirement for "justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity" means

that *a law enforcement officer* must be alarmed—that the statute targets the

interests of law enforcement officers in performing their duties without undue

concern. *Id*. at 586. The very text of the statute suggests the contrary: the statute

targets "concern for the safety of persons or property in the vicinity," not "concern

for law enforcement officers." The Florida Supreme Court is unlikely to adopt the

*McClamma* court's dictum as an element of this offense.

Fifth, Florida courts have insisted to varying degrees that the statutory

requirement for "justifiable and reasonable alarm or immediate concern for the

safety of persons or property in the vicinity" requires not just an immediate

concern but a concern for immediate harm. One court said it must be "substantially

certain" that harm will occur "in the very near future." *McClamma*, 138 So. 3d at

586. The Florida Supreme Court has not read the statute this narrowly and is

unlikely to do so.

A person's presence on a military base without authority taking photographs

of traffic patterns and an elementary school with a telephoto lens raises justifiable

and reasonable alarm and immediate concern that wrongdoing—including possible

preparation for a terrorist attack—is afoot. The prosecution need not prove that an

attack is "substantially certain" to occur. Nor must the prosecution prove that harm

to persons or property is likely to occur at once. Instead, the prosecution must

show, as the Florida Supreme Court has put it, that " 'specific and articulable facts

. . . taken together with rational inferences from those facts, reasonably warrant' a finding that a breach of the peace is imminent or the public safety is threatened." *Ecker*, 311 So. 2d at 109 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Here the public safety was threatened.

The evidence was sufficient to carry the government's burden of proof.

VI

This leaves for consideration Mr. Kalske's assertion that other-act evidence was improperly admitted. The government presented evidence—undisputed as it turns out—that Mr. Kalske engaged in similar conduct on prior occasions. He took photographs at a Florida Air National Guard base in Jacksonville and refused to provide a driver's license or other identification documents to security officers. He photographed a courthouse and police cars in Virginia, provided a farfetched explanation, and again refused to provide identification documents. He made a video recording of training at a police academy in Virginia and refused to provide an explanation or identification documents.

Issues contested at this trial included whether Mr. Kalske knew he was in a place he had no right to be and intentionally caused alarm or immediate concern. The loitering-or-prowling statute is governed by an objective standard, but knowledge and intent are not irrelevant. That this is so is confirmed by the statute's

second subsection, § 856.021(2), which requires officers to afford a person an opportunity to explain the person's presence and conduct.

Under Federal Rule of Evidence 404(b), evidence of a defendant's other acts is inadmissible to show propensity but is admissible for other purposes, including to show knowledge or intent. The Eleventh Circuit has said that Rule 404(b) is a rule of inclusion. *See, e.g.*, *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989). The evidence of Mr. Kalske's earlier activities was relevant to show his knowledge and intent while on Tyndall Air Force Base and was properly admitted.

To be sure, evidence that is otherwise admissible under Rule 404(b) may be excluded under Rule 403 on the ground that its probative value is outweighed by a danger of unfair prejudice or other considerations. But this was a bench trial. The risk of unfair prejudice from this evidence was vanishingly small. *See Williams v. Illinois*, 567 U.S. 50, 69-70 (2012) (noting that in a bench trial, the judge is presumed to consider evidence only for its proper purpose). There is no reason to believe this evidence had any effect on the decision.

Mr. Kalske has shown no error in admitting this evidence. And even if erroneous, admission of the evidence was harmless.

## VII

For these reasons, the judgment of conviction is affirmed.

SO ORDERED on June 26, 2017.

s/Robert L. Hinkle
United States District Judge